The opinion of the court was delivered by
Egan, J.
This case comes before us on two appeals; one taken by the opponent, and the other by the executor of the succession. The principal question grows out of the filing in this court of a plea of prescription of ten years against the judgment evidencing the claim of opponent. The judgment was rendered on the fourth of January, 1868, and has never been revived under the statute. The plea of prescription was filed on the sixteenth of February, 1878, more than ten years after ■the rendition of judgment.
Two questions confront us at once under this state of facts. First: Do the general rules laid down in the Civil Code for the interruption of ■prescription of debts apply to judgments as well as to other forms of obligation ?
Second: If they are thus applicable, has prescription been interrupted in the present case, and, if so, how? Prior to the act of 1853 ■our law provided no period for the prescription of judgments; debts thus evidenced and decreed to exist in the most solemn form were so highly favored and considered of so high dignity and truth that they were imprescriptible. Then, for the first time, it was provided that “all judgments for money, whether rendered within or without the State, shall be prescribed by the lapse of ten years from the rendition of •such judgments;” thus fixing their prescription at the longest time *1072 known to our law for the prescription of personal actions. It was, however, at the same time provided that any party interested (not merely the judgment creditor) might have the same (judgment) revived at any time before it is prescribed by having a citation issued according to law to the defendant or his representative from the court which rendered the judgment, unless the defendant or his representative show good cause why the judgment should not be revived: and that “any judgment revived as above provided shall continue in full force for ten years from the date of the order of court reviving the same, and any judgment may be revived as often as the party or parties interested may desire.” These provisions are re-enacted in terms in the Revised Civil Code, article 3547, under the general head of: “ Of the prescription which operates a release from debt; ” and under the particular head (which also embraces certain other particular actions and personal actions in general not otherwise provided for): “ Of the prescription of ten years.” This statute, passed originally in 1853, continued in the revision of 1855, 1856, and again in the present Revised Civil Code of 1870, is now, as we have seen, incorporated with and placed by the legislator upon the same general footing as other prescriptions operating a release from debt, and under the general head of “ Prescription,” in the Code. As an original question, then, it would hardly have occurred to any one to distinguish the prescription of judgments from the prescription of debts otherwise evidenced, except as the time of acquiring prescription -when specially provided, and except, also, as to the higher privilege accorded to-judgment creditors of preventing prescription altogether by the action of revival. We may here remark of this peculiar statutory action that it is not to be confounded with the interruption of prescription, which when the statute is complied with is not interrupted in the sense and meaning of the law, but is considered as having never been, as being altogether prevented by the action for revival. This is manifest not only from the fact that this prevention of prescription is provided for by the proviso of the very act which creates it under other conditions, but because by the terms of the law itself, unlike the interruption of prescription, the time during which the judgment shall continue in force is counted not from the date of service of citation, but “ from the date of the order of court reviving the judgment.” It is, however, argued that because the law provides a means for the revival of judgments, and for thus continuing them in force, this action of revival is the only means of avoiding the effect of the lapse of time fixed in the law for their prescription! In other words, that debts thus ascertained and decreed to be due in the most solemn form known to the law, to which the highest dignity is attached, and containing one, the existence and exigibility of which is closed by the rendition of the judgment, which *1073 theretofure stood as a perpetual public evidence in favor of the creditor and against the debtor, were placed and intended to be placed by the passage of the statute providing for the first time fcr their prescription “ in duriori casu ” than any and all other debts, of however little dignity, and however evidenced! Is such a legislative intention to be lightly assumed ? We say Ic in duriori casu,” because while the avoidance or interruption of prescription by suit against the debtor is always open to the creditor whose debt is not merged in judgment, he is also entitled to the benefit of all the means otherwise provided in the law for the avoidance or interruption of prescription, while if the argument now urged be well founded the judgment creditor alone is not permitted, to profit by an acknowledgment of his debtor voluntarily given, or by any of the other means of interruption known to the law and applicable to other creditors and debts without distinction. We should be very slow to arrive at such a conclusion unless it is clear that such was the legislative intention. What, then, it may be asked, was the object of the Legislature in providing in the same act for the revival of judgments by citation to the debtor and another solemn adjudication by the same court of the continued existence and exigibility of the judgment debt ? This, we think, is easily answered. But for the proviso of the act the judgment creditor who had once resorted to citation to his debtor and thus exhausted his legal remedy in the courts; who having once sued and attained all the ends and objects of suit would not again have been permitted to summon his debtor before a court of justice on account of the debt would have been left entirely at the mercy of his debtor who might not choose to give any voluntary acknowledgment of the debt and who not being liable to citation by his creditor, as in ease of ordinary debts or creditors, had nothing to do but sit still during the ten years and his judgment creditor would have thus been completely in his power notwithstanding the high dignity and formal judicial ascertainment of his debt. Hence it was that the same statute which made judgments prescriptible in ten years at the same time gave the creditor or other parties interested the statutory action for the revival and continuing in force of the judgment — without reference to any act of the debtor. Had the statute not given him a direct action in some form, he would have had none. The Legislature, which in those days was composed in part of lawyers of eminent ability, it may be well assumed saw this, and while applying prescription to judgments at the same time and by the same act provided this peculiar action of revival, which this court has repeatedly held to be so exceptional in its character that the grounds or evidence upon which the judgment is based can not be inquired into, and that the only issues pertinent are: Is there in fact a valid subsisting judgment, rendered by a competent court, and is it still exigible, or has *1074 it been extinguished by payment or in some other lawful mode ? It is then both in the scope of inquiry and in its effects wholly unlike the ordinary action upon debts and claims not in judgment, and neither by its terms nor any fair construction was intended to provide any different mode of interrupting prescription of judgments from those applicable to other forms of debt, but, as we have said, was intended altogether to prevent the prescription of debts evidenced in the solemn form of judgments aDd tq “continue them in force” in the language of the statute, not for ten years from the date of citation, which as to ordinary debts interrupts prescription, but for “ten years from the date of the order of court reviving the same.” It is questionable even whether aDy thing more than a mere order of revival is necessary under the statute, and whether it is necessary to await the delays of and clothe that order in the form of a judgment at all!
If, then, the proceeding under the statute was intended to revivify and “ continue in force ” ab origine the judgment, and with no other scope or object, how can it be said to be at all events the onty and exclusive means of “ interrupting ” the prescription of the debt evidenced by the judgment, a subject and matter for which the law at the time of the passage of the act under discussion made other and distinct provision? See O. O. 0. arts. 3482-3486 inclusive, and arts. 3514-3520 inclusive,but especially arts. 3480 an 1 3516 and 3517, which among the causes of interruption of prescription provide that “prescription ceases to run whenever the debtor or possessor makes acknoioledgment of the right of the person whose title they prescribed ” or “ of the debt.” If, however, there was ever reasonable cause for doubt on this subject of the legislative intent, it was removed by the act of April 18, 1858, entitled an act to require written proof in certain cases (acts of 1858, p. 148), the first section of which provides “ that hereof ter parol evidence shall not be received to prove any acknowledgment or promise to pay any judgment, sentence, or decree of any court of competent jurisdiction either in or out of the State for the purpose or in order to take such judgment, sentence, or decree out of prescription or to recover (revive) the same after prescription has run or been completed,” and does not even stop there, but continues affirmatively “that in all such cases the acknowledgment and promise to pay shall be proven by written evidence signed by the debtor* himself or by his specially authorised agent or attorney in fact.” Could there be any clearer legislative interpretation of the effect of the act of 1853 than is here given, or any clearer evidence that prior to the act of 1858 there was nothing to prevent the reception of parol evidence of the acknowledgment or promise to pay a judgment debt as well as one in any other form? And what would be the meaning or purpose of the Legislature in prohibiting the reception of parol evidence for such purpose in *1075 future, if evidence in any form could not be received at all ? What, too, becomes of the positive affirmative provision of the act that such •acknowledgment or promise to pay any judgment, sentence, or decree of any court of competent jurisdiction shall be proved bxj written evidence •signed by the debtor or his authorized agent? It is manifest that the •act of 1853 providing for the prescription and revivál of judgments was •not then considered or intended to exclude any competent evidence of the acknowledgment of a debt in the form of a judgment more than if •in any other form. Had there, however, been at any time reasonable •question on this subject, we think it was finally settled and removed beyond controversy when both the provisions of the act of 1858 and those of 1853 were incorporated in and made part of the Revised Civil Code of 1870 ; see articles 2278 and 3547 of the. existing Code. The latter article, relating to the prescription and revival of judgments, comes ■under the general head of “Prescription,” under that section which treats of “the prescription which operates a release from debt;” and ■under the immediate head “ of the prescription of ten years,” which follows in its order the provisions of the Code on the subject “ of the pre■seriptions of one, three, and five years,” and immediately precedes that of •thirty years, while it is itself preceded by the provisions of the Code on the subject “ of the causes which interrupt prescription,” “ of the causes which suspend the course of prescription,” and is followed with only the intervention of a single article by the section of the Code under the ■same general head of prescription which treats “ of the rules relative to the prescription operating a discharge from debts,” wherein it is provided (art. 3551) that “ The prescription releasing debts is interrupted by •all such eases (causes) as interrupt the prescription by which property is •acquired, and which have been explained in the first section of this ■chapter.” And it is also interrupted by the causes explained in the following articles, the first of which, art. 3552, reads : “A citation served upon one debtor in solido, or his acknoiuledgment of the debt, interrupts •the prescription with regard to all the others, and even their heirs.” And the next, art. 3553, that “ a citation served on the principal debtor, •or his acknowledgment, interrupts the prescription on the part of the surety;” while, under the preceding head referred to, among the causes •which interrupt prescription are enumerated not only citation before a court of justice, but it is also provided (art. 3520) that “prescription •ceases likewise to run whenever the debtor or possessor makes acknowledgment of the right of the person whose title they prescribed.” All of ■the provisions quoted-are'general, and neither by the terms of the law, •nor, we think, by any just rule of interpretation, can they be applied or ■confined to any particular period of prescription, or to any particular -class of claims or evidences of debt to the exclusion of others. There *1076 is nothing in their collocation or language to warrant so narrow a view, and by every fair and well established rule of interpretation, being upon a general subject under general heads, and being, also, general in their terms, they must have general application to all debts, however evidenced. The language used in regard to the prescription of judgments is no more peremptory than that in regard to other actions or debts prescriptible by ten years, or by any shorter or longer period. In regard to all alike, where there is no prevention, interruption, or suspen-' sion of prescription, it is an equally “ peremptory and perpetual bar to recovery,” where the creditor has been silent for the “ requisite time, without urging his claim.” C. C. 3459. "We think, then, that, subject only to the exclusion of parol evidence, by what is not inaptly termed our statute of frauds, the prescription of judgments may be interrupted like other debts, or debts evidenced in other form, and that there is nothing to exclude the acknowledgment, promise of the debtor to pay debts of such high dignity, and the existence and amount of which has been ascertained and decreed in the most solemn form known to the law, any more than acknowledgments of other debts of less dignity, rank, and certainty. It may not be amiss to remark, also, that where the proceeding by “scire facias,” which is somewhat similar to our statutory action of revival, prevails, that process is not the only means known to the law for the interruption or prevention of prescription.
Having answered the first inquiry with which we set out affirmatively, it only remains now to answer the second (i. e.): Has prescription been interrupted in the present case, and, if so, how?
On the fifth of March, 1875, the executor of Patrick filed a provisional account and tableau, from which the Soniat judgment, claimed and held by Mrs. Carroll, executrix, was altogether omitted. On the twenty-first of April, 1875, she filed an opposition asking that she be placed on the tableau as a judgment creditor, with the proper rank and privilege. There was judgment in the parish court on the sixteenth of October, 1876; and on appeal in the Supreme Court, April 16,1877, the opposition was sustained after a vigorous contest, and the existence and ownership of the judgment in question was decreed in favor of the same opponent, contradictorily with the executor of Patrick, who was ordered to file a new and amended tableau, and to place upon it said judgment. Accordingly an amended account and tableau was filed by the executor on the thirtieth of July, 1877, and the judgment of the opponent was recognized and placed upon it; at the same time, however, the executor of Dr. Patrick alleged the rendition in favor of the succession of a judgment versus Mrs. Ellen G-. Patrick, with which he claimed to compensate to its amount that of the opponent, Mrs. Carroll; and also alleged that since the decree of this court, before recited, he *1077 had instituted suit in the third district court of New Orleans, to revoke and set aside the transfer to Mrs. Carroll of the Soniat judgment, which he claimed rightfully to belong to Mrs. Patrick, the judgment debtor of ■the succession, and asked that further proceedings in the matter of account and tableau be stayed till the determination of the revocatory action in the third district court before mentioned. A copy of this proceeding in the third court was filed in the present case on the thirtieth of July, 1877, and appears in this record. Mrs. Carroll again opposed, and there was judgment on her opposition in the parish court, in accordance with the former decree of this court, and recognizing her rank and privilege as well as the amount of her judgment, which was ordered to be paid accordingly. It is from this j udgment that the present appeal is taken, both by the executor and by Mrs. Carroll, the opponent, who complains of error in the judgment, which, while sustaining her opposition so far as to recognize her as a judgment creditor to the full amount of the Soniat judgment, and refusing the claim to compensate it with the judgment versus Mrs. Patrick, still preferred to her certain expenses and charges of the succession, altogether amounting to a little more than $1100. In regard to this, we may as well now say that we are not prepared to say the parish judge erred as to the general rank of the items going to make up the sum; that the amounts are small, and such as, from their nature would seem to be legitimate and proper expenses and charges of the succession.
Recurring again to the other branch of the case: An examination of the pleadings both on the original opposition and that now under consideration discloses the fullest and clearest possible recognition by the executor of the existence, amount, and character of the Soniat judgment, which carried with it a vendor’s privilege for lands sold to deceased, and found in the succession; and all within less than ten years from the rendition of that judgment, as we have seen by the dates already given. Ln the answer to the first opposition the existence, amount, and character of the j udgment were not disputed, but, on the contrary, directly admitted. It was only the transfer to Mrs. Carroll which was attacked as simulated, fraudulent, and illegal, and the right claimed by the executor to compensate it with the same demand, not then in judgment against Mrs. Ellen G-. Patrick. It was on these issues that our former decree, of April, 1877, was rendered against the executor, and in favor of the opponent, as heretofore stated. The amended account and tableau, filed subsequent to that decree, in July last, and the petition of the executor of Patrick accompanying, sets forth the Soniat judgment with the utmost minuteness of detail, and after recognizing and placing it upon the •account makes up a statement of interest both on that and on the judgment against Mrs. Patrick, and strikes a balance after deducting it from *1078 the Soniat judgment in favor of the latter of $4411 62. The account-thus stated is asked to be approved and homologated. It is difficult to conceive of a fuller or clearer acknowledgment and judicial admission in the most solemn form, within the period of prescription of the full* amount of the judgment claimed by the opponent. But this is not all! Nothing could be more specific and direct in the way of acknowledgment of this judgment than the petition and suit in the third district* court of New Orleans to revoke and set aside the transfer of it from' Mrs. Patrick to Mrs. Carroll, the opponent against whom the prescription is here pleaded, and who has, year after year, and in various shapes* and forms, been judicially “urging her’claim,” to usé the language of' the law. C. C. 3459. She has been any thing but silent, while unfortunately for his plea the executor of Patrick, in his vigorous efforts to* defeat her, has been equally far from being silent, and, as we have seen,, has in every pleading filed by him in every judicial proceeding down to* the present, since the original provisional account, not only admitted, but himself directly alleged the existence and amount of the judgment set up by the opponent, and, according to his own allegations and proof in this proceeding, is even now waging vigorous contest to restore the-title to this very judgment to the debtor of the succession which he represents, that he may thereby collect his debt by compensating the two judgments pro and con. The existence, exigibility, or amount of theSoniat judgment were, indeed, never denied by the executor or any one-else until the plea of prescription of ten years was filed in this court in February of the present year. It is quite evident that counsel has relied' in support of the plea entirely upon the idea that no other evidence-except the order or judgment of revival provided by the statute could avoid the effect of the plea. We have, however, seen otherwise in discussing our first proposition; and we have now sufficiently reviewed the-facts of this case to make it manifest that not only by the most solemn* judicial allegations and admissions of the éxecutor- — who represents both the succession and the creditors — but, also, by the decree of this court on* the former opposition between the same parties, all within less than ten years from its rendition on the fourth of January, 1868, the judgment and debt of the opponent, Mrs. S. E. Carroll, now wife of Noble,, has been taken out of prescription, which has thus both by judicial proceeding to demand and enforce the debt, and by the most solemn admissions and assertions by the executor, of its existence, been interrupted. There are some minor objections raised by counsel to the-manner of proceeding to the trial of the opposition; all evidently-intended for delay, which we do not consider it necessary to notice, as it-was the duty of the executor of Patrick after our former decree to obey it according to its terms, and not again, in the face of that decree, to> *1079 claim the right to compensate the judgment of opponent with that against Mrs. Patrick. We think he has no one to thank but himself for any subsequent complications or litigation in the present case, and that the parish judge did not err.in disregarding this renewed attempt to assert rights already decreed adversely to his pretensions on the former appeal, or in giving to the opponent that trial of the opposition to which she was entitled under the law, as the case then stood. The same plea of prescription of ten years has been filed in this court against the judgments of Bebecca Bowe, No. 1766, and William Bogel, No. 1953, both of the docket of the fifth district court of West Baton Bouge. The former of these appears to have been rendered on the twenty-first of July, 1866, and the latter on the eighteenth of April, 1867, and would on their face appear to be prescribed. As, however," the executor of Patrick seems from this record not to have contested "these judgments, but, cn the contrary, to have, so far as appears, voluntarily placed them and the costs of court in them on his account and tableau, the hr mulogation of which he prayed for, and, as no creditor or other party in interest appears before us to confess them, we think justice requires that these judgment creditors should not be taken unawares by the plea filed in this court for the first time, when they had good reason to believe their judgments not only not contested, but admitted. We will not, therefore, conclude them by our judgment. We have not dwelt upon a motion to dismiss the appeal of the executor of Patrick, No. 7052, but will now say that we think the grounds for dismissal untenable, and that the executor had a right to appeal. The motion to dismiss is, therefore, overruled. The lands upon which Mrs. Carroll, executrix, claimed the vendor’s privilege were sold, in the succession, but an opposition was filed by her attorneys for her claiming her privilege bn the proceeds. By means of this, and of her opposition heretofore filed, and that now before ns, her privilege was preserved, and she is entitled to be paid her judgment out of the proceeds by privilege and preference over all other creditors; and if there be other sufficient funds in the succession to pay the expenses and charges thereof, by preference and privilege over them, also. She asks that the judgment of the parish court be modified and amended as to so decree. This, we think, she is entitled to. The appeals of Mrs. Carroll, executrix, and of Butler, executor of Patrick, numbered respectively on the docket of this court 6957 and 7052, were both in the same ease and from the same judgment. They were argued and submitted together, and this opinion applies to and covers the whole case on both, appeals, the only difference being as to the matter of costs.
It is therefore ordered and decreed that the pleas of prescription against the Soniat judgment of Mrs. Sarah E. Carroll, executrix of Joseph Carroll, deceased, be and they are overruled, and the judgment below be *1080 so amended as to her- as to require that the debts and charges allowed in'preference to hers be paid out of the funds of the succession of Patrick derived from other sources, so far as sufficient for that purpose, before any contribution thereto is called for or made from the funds or price of the land upon which she is decreed to have the special privilege of vendor for the payment of her judgment, and that, in other respects, as to her and her said judgment and debt, the judgment of the court below is affirmed, the succession to pay costs of both courts on her appeal, 6957. It is further ordered and decreed that so much of this case as relates to and is affected by the plea of prescription filed in this court to the judgments of Rebecca Rowe and of William Bogel be remanded to the court below for the trial of that question only, and as between the holders of said judgment and the succession the costs of appeal number 7052 by the executor of Patrick await the judgment on the question of prescription, and as to all others that said costs be paid by the succession of Patrick.